**AD HOC COMMITTEE ON JUDICIAL ADMINISTRATION, an unincorporated association of Massachusetts attorneys and residents; and Carmen Dicostanzo, an Individual, Plaintiffs,**

v.

**COMMONWEALTH OF MASSACHU-SETTS et al., Defendants.**

Civ. A. No. 72–3331–M.

United States District Court,
D. Massachusetts,

March 30, 1973.

# 954

Harold Brown, Boston, Mass., for plaintiffs.

Lawrence T. Bench, Asst. Atty. Gen., Commonwealth of Mass., for defendants.

## MEMORANDUM

FRANK J. MURRAY, District Judge.

The court is requested in this case to grant relief to plaintiffs based on allegations of the complaint that defendants have failed to provide judicial manpower and adequate court facilities in the courts of the Commonwealth of Massachusetts such as to undermine the judicial process, and thus bring about violations of the speedy trial proviso of the Sixth Amendment, and the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

The defendants are the Commonwealth of Massachusetts, the General Court of the Commonwealth which "is empowered to enact legislation", and Francis W. Sargent in his capacity as Governor of the Commonwealth who "has the authority to approve legislation enacted by the General Court and to appoint judges".

■ The plaintiffs are (1) an unincorporated association of attorneys, presumably confederated together for the purpose of this case, who represent parties in civil and criminal cases pending in the courts of the Commonwealth, and (2) an elderly plaintiff in a civil tort action pending in the Superior Court for the County of Worcester. They purport to represent a class consisting of "all persons in the Commonwealth of Massachusetts" as well as six subgroups named in the complaint.[1]

---

1. The subgroups named in paragraph 13 of the complaint are:
   a. All defendants in pending criminal proceedings;
   b. All parties in all pending civil proceedings;
   c. The judicial branch of the Commonwealth of Massachusetts;
   d. All persons of moderate or modest means who are litigants in civil or criminal matters, represented by the attorneys in the Ad Hoc Committee on Judicial Administration;
   e. All persons of advanced age or in minority and underprivileged groups; and
   f. All attorneys admitted to practice law in said Commonwealth.

It is alleged that there are in excess of five million persons in the general class and approximately half that number in the various subclasses. The plaintiffs'

Plaintiffs bring the complaint under 42 U.S.C. § 1983. Jurisdiction is based on 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights). Injunctive and declaratory relief is sought for alleged deprivations of rights secured to the plaintiffs by the United States Constitution. The defendants have moved to dismiss the complaint on various grounds.[2] Certain averments—lack of jurisdiction of the subject matter, and failure to state a claim upon which relief can be granted—will be considered as matter of law, taking the allegations of the complaint well pleaded as true.

## I

The allegations are that defendants have failed to provide court facilities, judges, clerical personnel, and other facilities reasonably necessary to protect the plaintiffs' federal constitutional rights; that persons charged with crime have been unable to obtain a speedy trial without fault on their part; that parties to civil litigation are required to wait at least two years without a trial without fault on their part, and thus are denied due process of law; that due to court congestion the plaintiff attorneys have been deprived of a forum in which to exercise professional responsibilities to their clients and the public, causing a substantial confiscation of their opportunity to survive economically; that persons of moderate means and of advanced years are economically less able to withstand the attritional effect of delays to the advantage of persons of wealth; that such disadvantaged persons suffer economic loss or physical deprivations while awaiting a "meaningful opportunity to be heard".[3]

burden of proving jurisdiction of the court is, of course, not aided by attempting to bring a great mass of people who in theory may have similar interests in a public question. The plaintiffs must show that the court has jurisdiction apart from the right of joinder under Rule 23, Fed.R.Civ.P. *See* Alvarez v. Pan American Life Insurance Co., 375 F.2d 992, 996–997 (5th Cir. 1967).

2. The grounds are: (1) lack of jurisdiction of the subject matter in that no substantial federal question is alleged; (2) lack of jurisdiction over defendants in that each is immune from suit; (3) complaint fails to state a claim whereon relief can be granted; (4) the relief sought is barred by the Tenth and Eleventh Amendments; (5) there are adequate remedies at law for the persons purportedly represented by plaintiffs.

3. If these claims appear extravagant, it is well to note that the problem of delay in bringing cases to trial is a matter of deep concern to the Bench as well as the Bar. Over the past few years Chief Justice Tauro of the Massachusetts Supreme Judicial Court has spoken out frequently, warning of the impending deterioration of the judicial process from the failure of the legislative branch to provide the needed judicial manpower and court facilities to assure the prompt and fair administration of justice in the Commonwealth's courts. As recently as September 1972, he said:

The dismal plight of the Superior Court cannot in any sense support even guarded optimism. In previous reports, I argued at length for the expansion of the Superior Court bench. The situation of the Superior Court has deteriorated rapidly during the past several years. Chief Justice McLaughlin, while arguing forcefully for necessary relief, has been compelled to reduce and even eliminate civil jury sessions of the Superior Court in order to provide constitutionally guaranteed speedy trials in criminal prosecutions.

The Legislature's Joint Special Committee on Reform of the Judicial System in its Interim Report recommended the addition of thirteen more Superior Court Justices, the maximum number to make full utilization of available Superior Court facilities. The Joint Committee on the Judiciary recommended a more modest, but more likely attainable, increase of five justices. Nevertheless, the Legislature prorogued without providing for any additional justices of the Superior Court.

57 Mass.L.Q. 223–24 (1972). Also, the Executive Secretary of the Supreme Judicial Court, in his report to the Justices of the Court as of June 30, 1971, emphasized:

5. There is indeed a crisis in the courts of Massachusetts. No improvements in the management of the business of the courts will provide the relief

It is appropriate to note that the deprivations of federal constitutional rights are alleged to result not from actions authorized or pursued under any statute of the Commonwealth, but rather from certain usages and practices permitted to exist affecting plaintiffs as a result of the continuing failure of the defendants to provide remedies or relief to enable the judiciary to fulfill its obligations under the Constitution of Massachusetts. No injunction is sought to restrain the enforcement, execution or operation of any statute of the Commonwealth,[4] nor is this court requested to declare any statute unconstitutional. No relief is sought for any particular plaintiff in any pending case in the state court on the ground that court is depriving such plaintiff of his federal constitutional rights.

The specific relief sought is that the defendants be ordered to provide for additional court facilities, more judges and clerical employees, and related facilities, and "to implement such programs with adequate funding, all of which is to be performed with reasonable expedition". Additionally, there are prayers that this court "fashion all other orders which may be deemed necessary and appropriate to resolve the judicial crisis" in the state courts, and to retain jurisdiction of the case "in order to supervise the fulfillment of its decrees".

The main arguments of the defendants, as it appeared to the court from their brief and oral argument, are (1) that the complaint fails to raise any substantial federal question or claim upon which relief can be granted, and (2) that the action against defendants is barred by the Eleventh Amendment.

### III

The allegations of the complaint must present a substantial justiciable federal question; otherwise, there being no other basis of subject-matter jurisdiction, the complaint must be dismissed. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Brown v. Dunne, 409 F.2d 341, 344 (7th Cir. 1969). It is argued by the plaintiffs that the issue presented by the complaint is not whether an individual charged with a crime, or an aged and indigent civil litigant, has in fact been prejudiced, but rather whether there is denial of such access to the Commonwealth's courts due to congestion of the dockets as to result generally in impermissible consequences under the requirements of due process of law, equal protection of the laws, and speedy trial in criminal cases. On this tender of the issues the inquiry is wheth-

---

that additional judges will bring to the judicial system.

*  *  *  *  *

40. The legal profession has constantly warned the legislative branch of the crisis in the Massachusetts courts. It is apparent, however, that no adequate response will be made until the pressure of public opinion forces action that will supply the courts with the judges and supporting personnel, the prosecutors and defenders needed in the criminal justice system.

*  *  *  *  *

215. The plight of the Superior Court has been discussed at length in the earlier section of this report under the heading of Delay in Court. When it becomes necessary for the Chief Justice to shut down all civil jury sessions in a large county in order to meet the demands for criminal trials, the situation is more than a crisis, it is a breakdown of the judicial system.

*  *  *  *  *

217. The reports of this office have dwelt constantly on the need for enlargement of the [S]uperior [C]ourt bench and for improvement in its working conditions. Once again the message is repeated in the hope that at long last there will be a response.

Executive Secretary, Fifteenth Annual Report to the Justices of the Supreme Judicial Court, at pp. 3, 9, 40, 41 (Pub. Doc.No.166, 1971).

4. When the complaint was filed the convening of a three-judge court was requested, and later withdrawn.

er there is thus presented a case "arising under" the Federal Constitution, the laws of the United States, or within the specifically enumerated categories of cases under Article III, Section 2 of the Constitution; and beyond this, if jurisdiction is found, the further question whether the subject matter is appropriate for judicial consideration, that is, whether the case is justiciable.

While the court does have jurisdiction of the case under 28 U.S.C. § 1331 because the claim is alleged to arise under the Constitution, the complaint does not state a justiciable cause of action.

### IV

In Adickes v. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), in giving the opinion of the Court, Justice Harlan said:

> Congress included customs and usages within its definition of law in . . . § 1983 because of the persistent and widespread discriminatory practices of state officials in some areas of the post-bellum South. As Representative Garfield said: "[E]ven where the laws are just and equal on their face, yet, by a systematic maladministration of them, or a neglect or refusal to enforce their provisions, a portion of the people are denied equal protection under them." Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a "custom or usage" with the force of law.
>
> This interpretation of custom recognizes that settled practices of state officials may, by imposing sanctions or withholding benefits, transform private predilections into compulsory rules of behavior no less than legislative pronouncements.

*Id.* at 167–168, 90 S.Ct. at 1613–1614. The Court held in that case that "a 'custom or usage, of [a] State' for purposes of [42 U.S.C.] § 1983 must have the force of law by virtue of the persistent practices of state officials". *Id.* at 167, 90

S.Ct. at 1613. It follows that unless it can be found that the inaction of the Massachusetts legislature to relieve against undue delay in the courts amounts to a "custom, or usage of [a] State", the plaintiffs have no justiciable cause of action.

Looking at the due process and equal protection clauses of the Fourteenth Amendment, and the instances where relief has been granted under them against state officials, the court cannot say there may never be a situation where persistent legislative inaction, by withholding the manpower and facilities necessary to enable the judiciary to function promptly and fairly to administer justice in the courts, would not be found to be such a settled practice as to have the force of law for the purposes of relief under section 1983. As Justice Frankfurter wrote:

> It would be a narrow conception of jurisprudence to confine the notion of "laws" to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice . . . can establish what is state law. The equal protection clause did not write an empty formalism into the Constitution. Deeply embedded traditional ways of carrying out state policy . . . are often tougher and truer law than the dead words of the written text.

Nashville, C. & St. L. Ry. v. Browning, 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1940).

There is a difference, of course, between official inaction in the sense of neglecting or failing to enforce laws already on the books, and "inaction implicit in the failure to enact corrective legislation". See Adickes v. Kress & Co., *supra* at 168, n. 39, 90 S.Ct. at 1614. Even if this court could find that the legislative inaction complained of here was within the scope of section 1983, that section protects only rights, privileges, aud immunities secured by the Fourteenth Amendment. The plaintiffs have not shown that any of the alleged depri-

vations of rights claimed by them are traditionally protected by the Fourteenth Amendment.

■ Under that Amendment the speedy trial provisions of the Sixth Amendment are made binding on the States. The speedy trial proviso, however, imposes no obligation upon the States to fashion procedural rules to prevent or ameliorate undue delay in criminal cases or to protect the rights of criminal defendants. In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Court, after adverting to the fact that "some legislatures have enacted laws, and some courts have adopted procedural rules which more narrowly define the right", said:

> We do not establish procedural rules for the States, except when mandated by the Constitution. We find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months. The States, of course, are free to prescribe a reasonable period consistent with constitutional standards, but our approach must be less precise.

*Id.* at 523, 92 S.Ct. at 2188. Rather, the Court accepted a balancing test which "necessarily compels courts to approach speedy-trial cases on an *ad hoc* basis". *Id.* at 530, 92 S.Ct. at 2192. These principles apply in the case at bar. In this connection it should also be noted that the speedy trial right of a criminal defendant, although "a more vague concept than other procedural rights", *id.* at 521, 92 S.Ct. at 2187, is conceptually a more crucial right than a civil litigant's right to a speedy hearing under the due process clause. It follows, *a fortiori,* that the right, if such it is, of the civil litigant, being more amorphous and non-specific, is even less susceptible to definition and protection under the Fourteenth Amendment.

■■ The alleged confiscation of the opportunity of plaintiff attorneys to survive economically states no cause of action under the Fourteenth Amendment. Not only is there a total absence of apposite illustrations or authority brought to the court's attention [5] to support the alleged constitutional claim, it is wholly untenable upon any concept of federalism. A person's privilege to practice law is, of course, protected against state action that contravenes the due process or equal protection clauses of the Fourteenth Amendment. There is no allegation here of any intentional deprivation of the privilege; only the claim of incidental diminution by legislative inaction, not total denial, of the opportunity of lawyers to maintain a more active (perhaps more viable) current schedule for the trial of their cases. The court is not unmindful that undue delay is a matter of deep concern,[6] but can find no obligation imposed upon the States by the Fourteenth Amendment to provide relief.

■■ No federal question is stated in the claim that persons of moderate means and of advanced years are economically less able to withstand the attritional effect of delays to the advantage of persons of wealth, as a result of delays in bringing their cases to trial. There is no allegation that the disadvantage to persons alleged to be represented by plaintiffs is intentionally caused by defendants or results from any invidious

5. Haley v. Troy, 338 F.Supp. 794 (D.C. Mass.1972) dealt with judicial action only and not the rights of lawyers. In Grace v. Howley, 51 Ill.2d 478, 283 N.E.2d 474 (1972), an Illinois "no fault" motor vehicle compensation statute was held to violate the Illinois Constitution. However, the statute did not fall because of its effect on lawyers, but because of its effect on insured persons. Further, there was no holding in the Supreme Court of Illinois of any violation of the United States Constitution.

6. The court calls to mind the continuing efforts made by the judges of this court seeking additional judicial manpower to deal with the delay caused by our own heavy dockets.

discrimination. Moreover, it is not every disadvantage suffered by an indigent person in the process of litigation that amounts to a denial of due process. The question becomes under the Fourteenth Amendment whether the particular "right" claimed is of such fundamental importance that it should not be denied anyone because of lack of funds. *See* Discrimination Against the Poor and the Fourteenth Amendment, 81 Harv.L.Rev. 435 (1967). The claim alleged is not susceptible to definition of such fundamental importance.

To support their claims plaintiffs place reliance upon the legislative reapportionment cases, which involve distribution of political power by a state, *e. g.*, Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961); Whitcomb v. Chavis, 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971), and the school desegregation cases, which deal with plans designed to remedy racial discrimination in public schools, *e. g.*, Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); United States v. Montgomery County Board of Education, 395 U.S. 225, 89 S.Ct. 1670, 23 L.Ed.2d 263 (1969); Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), for the proposition that this case, like those cited, does not fall into the category of "nonjusticiability". But the significant factors which the Court in Baker v. Carr, *supra,* referred to as determining whether a cause is justiciable, and found in that case, are not present in the case at bar. There Justice

Brennan said: "[T]he Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded". *Id.* at 198, 82 S.Ct. at 700.

Taking into consideration the factors mentioned, it may readily be seen that the cases relied upon by plaintiffs are in many respects distinguishable from the case at bar. Thus in the reapportionment cases the duty owed plaintiffs was readily identifiable; it was that the State officials owed to the citizens a legislative body chosen in such manner that each citizen's vote was as significant as the next, irrespective of the political district of the state wherein the citizen resided. Any breach of that duty was easily determinable by examination of both voting districts and census reports, to discover whether some voters had a much more heavily "weighted" vote than others leading to an unconstitutional dilution of certain of the votes. Similarly, the school racial imbalance cases lend themselves to an analysis of census reports and other readily ascertainable facts which reflect the racial make-up of schools in the district and the community. The duty of state officials to provide a unitary school system is well defined and identifiable, and any relief required as a result of a breach of that duty can be judicially molded. *See* Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 11–14, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). In the case at bar, neither the duty owed nor its breach is easy to identify or determine much less may relief be granted using manageable judicial standards.[7]

---

7. Other federal courts have entertained comparable attacks on state court congestion. Thus one court noted:

    Undue delay in bringing cases to trial is, of course, a matter of deep concern to Bench and Bar alike. The expression so frequently used and more frequently misunderstood "justice delayed is justice denied" fails to take into consideration the heavy concentration of tort cases in the areas of greatest delays, the time (months and years) apparently required to seek insurance company adjustment, the ultimate institution of suit, the countless mutual adjournments for pleadings and other pre-trial procedures, all a part of the strategy adopted by both sides to obtain the best possible settlement, ending only with the frequently traumatic (to counsel) exper-

# 960

## V

The Eleventh Amendment clearly bars the action against the named defendant, the Commonwealth of Massachusetts. Hans v. Louisiana, 134 U.S. 1, 11, 10 S.Ct. 504, 33 L.Ed. 842 (1889). Plaintiffs rely upon Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1907), for the proposition that this action can be maintained against the legislators and the chief executive of the Commonwealth. The Amendment bars a suit when the State "is . . '. the only real party against which alone in fact the relief is asked, and against which the judgment or decree effectively operates". Ex parte Ayers, 123 U.S. 443, 506, 8 S.Ct. 164, 183, 31 L.Ed. 216 (1887). Whether the State in any case is the real party defendant must be determined from the nature of the action and the relief demanded. Ford Motor Co. v. Department of Treasury of the State of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). What the plaintiffs seek here is not the enforcement of laws already on the books, but for the legislative branch of the Commonwealth to enact legislation, and, thereafter, for the Governor to execute it. This puts the case squarely within the proscription of the Eleventh Amendment, and thus bars the action against The General Court and Francis W. Sargent.

Accordingly, the motions of the defendants to dismiss the action are hereby allowed for failure of the complaint to state a justiciable cause of action, and on the ground that the action against the defendants is barred by the Eleventh Amendment.

---

ience of being actually called for trial. These real life situations are not mentioned to indicate any lack of need for greater judicial manpower but only as a preamble to the only issue now before us, namely; can or should a federal court be so presumptuous not only to advise but to direct the legislators of the State of New York and its Executive Officers how to manage the State's judicial affairs.

Kail v. Rockefeller, 275 F.Supp. 937, 940 (S.D.N.Y.1967). *See also* Dekosenko v. State of New York, 311 F.Supp. 126 (S.D.N.Y.1969); New York State Trial Lawyers v. Rockefeller, 267 F.Supp. 148 (S.D.N.Y.1967); Buchanan v. Rhodes, 249 F.Supp. 860 (N.D.Ohio 1966), *appeal dismissed*, 385 U.S. 3, 87 S.Ct. 33, 17 L. Ed.2d 3 (1966).