Oscar **WRIGHT**, Plaintiff,

v.

Sgt. Robert **STICKLER**, etc., et al., Defendants.

No. 78 C 4204.

United States District Court,
N. D. Illinois, E. D.

Sept. 14, 1981.

---

Ronald J. Clark, Chicago, Ill., for plaintiff.

Michael B. Nash, Burke, Nash & Shea Ltd., Timothy J. Gillick, Pretzel, Stouffer, Nolan & Rooney, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge:

Plaintiff, Oscar Wright, brings this action against Sergeant Robert Stickler, a North Chicago police officer, Edward Chrapowski, Chief of Police for the City of North Chicago, and the City of North Chicago for violating his Fourteenth Amendment rights secured through 42 U.S.C. § 1983. This court notes that some of plaintiff's allegations invoke his Eighth Amendment rights. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343. The defendants have moved to dismiss the First Amended Complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

The complaint alleges that plaintiff Wright was arrested on April 21, 1976, charged with marijuana possession, and in-

carcerated in the City of North Chicago's lock-up. The plaintiff was under Sgt. Stickler's charge at the time of incarceration. While in custody of the defendants, the plaintiff developed severe abdominal pains and was unable to urinate. Despite plaintiff's complaint of his problem, Sgt. Stickler refused his requests for medical attention. Both Wright's father, who visited plaintiff in jail, and his mother also appealed to Sgt. Stickler for medical aid. Stickler refused their requests, but he told the Wright family that a doctor could visit plaintiff if they could find one who would come to the jail. In addition, Stickler indicated that he would send plaintiff to the hospital if a doctor gave such a specific order. As a direct result of Sgt. Stickler's refusal to provide prompt medical treatment, plaintiff alleges that he incurred physical injury which caused his subsequent confinement to a hospital. He does not describe the precise nature of his injury or the duration of his hospitalization. The complaint alleges that imposition of such cruel, unusual, and unreasonable conditions deprived plaintiff of his rights secured under 42 U.S.C. § 1983.

Count I seeks both compensatory and punitive damages against Sgt. Stickler and the City of North Chicago because of Stickler's refusal to provide plaintiff with medical treatment. Count II alleges that defendant Chrapowski as Chief of Police knowingly allowed conditions in the lock-up to become unsafe and unsanitary, and that those conditions substantially contributed to plaintiff's illness. Count III is also directed against Chief Chrapowski; it alleges that Sgt. Stickler had been subject of several complaints of abusive conduct and maltreatment of citizens and that he had compiled an employment history indicating that he was likely to engage in further abuse of citizens. Despite his knowledge of Stickler's employment history, Chief Chrapowski failed either to assign him to duties where the opportunity to abuse citizens would not arise or to suspend him from the force. Count IV charges the City of North Chicago with knowledge of Sgt. Stickler's employment history. By failing to supervise its police employees properly, the City thereby encouraged and permitted Sgt. Stickler to remain in a position from which he could continue to abuse citizens. Count V states that it was the custom and policy of the City of North Chicago to maintain its lock-up in an unclean and unsanitary manner which endangered the health of its residents, and that such conditions substantially contributed to plaintiff's illness.

### Claim Against Sgt. Stickler

In support of the motion to dismiss, defendants contend that plaintiff's allegations concerning Sgt. Stickler's denial of medical attention do not plead the facts with the requisite specificity for a cause of action. In addition, defendants assert that plaintiff's allegations do not rise to the level of a constitutional deprivation of civil rights.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Seventh Circuit Court of Appeals recently applied Rule 8(a) to a claim under 42 U.S.C. § 1983 in *Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir. 1981). The accepted rule in appraising the sufficiency of the complaint is that it "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* 644 F.2d at 655 citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In reviewing a dismissal on the pleadings all allegations in the complaint are taken as true and the complaint is construed liberally in favor of the party opposing the motion to dismiss. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976). A complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *Id.* 537 F.2d at 858.

█ A claim of medical mistreatment rises to fourteenth amendment proportions when it asserts a refusal to provide essential medical care after a prisoner brings his

medical complaint to the attention of prison authorities. *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), *cert. denied sub. nom Thomas v. Cannon*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974). In determining whether medical care was in fact essential, the court applied the following test:

> [The] question would be, we think, whether it had been proved that a physician exercising ordinary skill and care at the time of the request for medical care would have concluded that the symptoms of the prisoner evidenced a serious disease or injury; that the potential for harm by reason of delay or denial of medical care was substantial; and that such harm did result. In deciding at the pleading stage whether a claim has been stated, the court must consider whether the factual allegations of the complaint SUGGEST the presence of these factors.

*Id.* 493 F.2d at 158. (emphasis supplied) *Accord: Doyle v. Unicare Health Serv., Inc., Aurora Center*, 399 F.Supp. 69, 72–73 (N.D.Ill.1975). Significantly, the complaint need only suggest, rather than specifically allege or prove, the foregoing elements in order to withstand dismissal.

 ██ In his first amended complaint, plaintiff Wright asserts that he became "seriously ill" while in defendant Stickler's custody. Plaintiff supports his assertion with the specific statement that he was "unable to urinate and had severe abdominal pains." Because the complaint sufficiently describes the nature of plaintiff's symptoms, this court finds that a physician exercising ordinary skill at the time of the request would have concluded that Wright evidenced a serious disease or injury. Further, plaintiff's symptoms indicated that the potential for harm was substantial by reason of delay in medical treatment. Finally, plaintiff's assertion that he was subsequently confined to a hospital suggests that such harm did result.

Defendants contend that Sgt. Stickler was willing to provide plaintiff with an opportunity to see a doctor if plaintiff or his family could find one to visit the jail; Stickler also would permit plaintiff to enter a hospital if a doctor so ordered. Because Sgt. Stickler displayed a willingness to provide plaintiff with medical care, defendant argues that plaintiff's claim is not of constitutional magnitude. However, the Seventh Circuit's language in *Thomas v. Pate, supra,* 493 F.2d at 158 provides guidance: "We also think that it is sufficient to allege facts which suggest that the medical care provided is so clearly inadequate as to amount to a refusal to provide essential care or is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." This court notes that the Supreme Court cited the *Thomas* case with approval when it held that deliberate indifference to serious medical needs of prisoners in violation of the Eighth Amendment may be manifested by prison guards in intentionally denying or delaying access to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. *Id.* 429 U.S. at 105, 97 S.Ct. at 291.

Given the common difficulty in today's society of finding a physician willing or able to visit a patient outside of a clinic or hospital, it is not surprising that Stickler's position resulted in Wright's failure to receive prompt medical attention. The difficulty in securing medical attention increases where a person is in jail and may not have an established relationship with a doctor. An individual incarcerated, whether for a term of life or merely for the night to "dry out" in the local drunk tank, becomes both vulnerable and dependent upon the state to provide certain simple and basic human needs such as medical care. *Fitzke v. Shappell*, 468 F.2d 1072, 1076 (6th Cir. 1972). Consequently, the allegations in Count I suggest that Sgt. Stickler's conduct was so inadequate as to amount to a refusal to provide medical care and so blatantly inappropriate as to evidence deliberate indifference to plaintiff's serious medical needs.

*Claims against Chief of Police*

Count II is principally directed against Edward Chrapowski, the Chief of Police for North Chicago. It alleges that Chrapowski was "responsible for the general management and control of the Police Department, with full and complete authority to administer the Department including the lock-up". It further states that Chrapowski's duties included keeping the lock-up sanitary and clean as well as providing proper medical attention to its prisoners. Plaintiff claims that defendant Chrapowski "knowingly allowed conditions in the lock-up to become unsafe and unsanitary", and that such conditions "substantially contributed to plaintiff's illness."

This court dismissed a similar complaint against a police superintendent on the grounds that plaintiff failed to allege more than negligent supervision. *Stringer v. City of Chicago*, 464 F.Supp. 887, 891 (N.D.Ill.1979). In order to establish liability under § 1983 of supervisory officials for deprivation of constitutional rights through the acts of their subordinates, an affirmative link must be proven between the officials' acts or omissions and the actions directly causing the alleged violation, so that they can be said to have encouraged, approved of, or acquiesced in the violation. *Id.* 464 F.Supp. at 891. Such an affirmative link requires more than mere negligent supervision of those over whom a defendant has authority and control. *Id.* 464 F.Supp. at 891. The complaint at bar, however, charges that defendant Chrapowski "knowingly" allowed such conditions to exist in the lock-up, over which he had supervisory control. As another court observed, a supervisor of jail cells may be liable for inaction when he has direct responsibility for the maintenance of unconstitutional conditions and knows of their existence. *Smith v. Ambrogio*, 456 F.Supp. 1130, 1136 (D.Conn.1978). For that reason, Count II alleges that Chrapowski acted with the requisite mental state for purposes of his liability under § 1983.

Count III, which is also directed against Chrapowski, alleges that he had the duty to transfer, to discipline, and "to initiate discharge proceedings against officers whose conduct warranted termination of their police employment." Upon plaintiff's information and belief, defendant Sgt. Stickler had been "the subject of several complaints of abusive conduct toward or maltreatment of citizens" and had compiled "an employment history indicating that he was likely to engage in abusive conduct" toward citizens. Despite having notice of Stickler's complaint records and employment history, Chrapowski failed to assign Stickler "to duties in which he would not have the opportunity to mistreat citizens, to suspend him, to seek his discharge, or otherwise to prevent Stickler from engaging in abusive conduct toward citizens."

In discussing *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), Judge Marshall observed that a "pattern" of constitutional violations by the defendants' subordinates suggests the inference that a supervisory official with knowledge of the pattern has acquiesced or colluded in it; without such a pattern, there is no "affirmative link" between the conduct of the subordinates and the supervisory officials. *Perry v. Elrod*, 436 F.Supp. 299, 303–304 (N.D.Ill.1977); *Mayes v. Elrod*, 470 F.Supp. 1188, 1194 (N.D.Ill.1979). If plaintiff alleges such a link, he must be afforded an opportunity to prove it. *Id.* 436 F.Supp. at 304. The complaint at bar alleges that Chief Chrapowski was aware that Sgt. Stickler had been the subject of several complaints for abusive conduct towards citizens. Chrapowski's failure to act in spite of his knowledge of Stickler's pattern of misconduct suggests the inference that the police chief implicitly authorized such violations. As a result, plaintiff has alleged sufficient facts to suggest an affirmative link between Stickler's misconduct and the supervisory official. Whether Stickler had in fact engaged in a pattern of violations or whether Chrapowski had actual knowledge of it should await the discovery of evidence; those issues may be considered upon a subsequent motion for summary judgment.

Some courts have imposed a requirement of pleading specific acts by senior governmental officials establishing a policy or custom for purposes of the *Monell* case. *See Smith v. Ambrogio, supra,* 456 F.Supp. at 1137. This court recently rejected the stringent pleading requirement of *Smith v. Ambrogio* when Judge Shadur applied the more liberal requirements of Rule 8(a), Fed. R.Civ.P. *Thompson v. Village of Evergreen Park, Ill.,* 503 F.Supp. 251, 252 (N.D.Ill. 1981). This court finds that the allegations in Counts II and III are sufficient to state a claim under the pleading requirements of Rule 8(a), Fed.R.Civ.P.

*Claims against City of North Chicago*

■ Counts IV and V are directed against the City of North Chicago. Count IV, like Count III, alleges that Sgt. Stickler had been the subject of several complaints of abusive conduct towards citizens. In spite of having notice of Stickler's complaint records, the City "by its policy of failing to properly supervise police employees permitted and encouraged" Stickler's conduct, failed to assign him to a position where he would not have the opportunity to mistreat citizens, and failed to prevent him from engaging in such conduct.

Municipalities can be sued for damages under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2046, 56 L.Ed.2d 611 (1978). The ascertainment of an unarticulated policy of a town is similar to the inquiry concerning the liability of supervisory officials accused of responsibility for unconstitutional conduct taken by subordinates. *Smith v. Ambrogio, supra,* 456 F.Supp. at 1135; *Magayanes v. City of Chicago,* 496 F.Supp. 812, 814 (N.D.Ill.1980). As Judge Marshall has stated, a govern-

mental body may be held liable for a pervasive pattern of constitutional abuses by its employees, if the entity's inaction or ineptitude in supervising those employees is so great that it evidences deliberate and conscious indifference to a substantial probability that constitutional violations will result. *Mayes v. Elrod, supra,* 470 F.Supp. at 1194. In Count IV, as in Count III, plaintiff alleges that Sgt. Stickler had compiled a record of complaints for abusive conduct that was known to the town. Unlike the complaint in *Magayanes v. City of Chicago, supra,* Count IV of the complaint at bar is predicated on a pattern of misconduct which suggests that the town implicitly authorized such violations.

Count V, which is similar to Count II, alleges that "it was the custom and policy" of the town to "maintain its lock-up in such an unclean and unsanitary manner" as to endanger the health of its prisoners. Plaintiff claims that such conditions substantially contributed to his illness. As stated in *Estelle v. Gamble, supra,* "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* 429 U.S. at 106, 97 S.Ct. at 292. Identification of the primary or proximate cause of plaintiff's illness is a factual question which cannot be resolved at this stage of the proceedings; it is enough at this point that plaintiff has charged the town with a continuing pattern of constitutional violations, a custom or policy which caused these violations, and a causal link between those violations and plaintiff's illness. *See Mayes v. Elrod, supra,* 470 F.Supp. at 1195.

*Conclusion*

For the foregoing reasons, the motion of the defendants to dismiss the First Amended Complaint is denied.