Hugh R. SIMMS, Plaintiff,

v.

Peter D. REINER et al., Defendants.

No. 74 C 2750.

United States District Court,
N. D. Illinois, E. D.

Aug. 9, 1976.

Hugh R. Simms, pro se.

Stephen Marcus, Clausen, Miller, Gorman, Caffrey & Witous, Kralovec, Sweeney, Marquard & Doyle, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

This is a civil rights action based on 42 U.S.C. § 1983, other Code provisions,[1] and the Fourth, Fifth and Fourteenth Amendments to the Constitution with jurisdiction invoked under 28 U.S.C. § 1331 and § 1343. Plaintiff, appearing pro se,[2] seeks monetary damages for injuries received when he was shot by defendant Peter D. Reiner, a police officer of the City of Zion, Illinois, while Reiner was assisting defendant Frank Knutell, a Deputy Sheriff of Lake County, Illinois, in the attempted service upon plaintiff of a summons in a divorce action brought by plaintiff's wife. Plaintiff alleges that Knutell and Reiner arbitrarily invaded his home without a warrant to effectuate service of the summons and that Reiner used unreasonable and malicious force against the plaintiff by shooting him. Reiner was also shot during the incident, and plaintiff was subsequently indicted on state charges of attempted murder and aggravated battery for the shooting of Reiner. He was found guilty only of aggravated battery, and his conviction has been affirmed by the Illinois Appellate Court for the Second District. *People v. Simms,* 38 Ill.App.3d 703, 348 N.E.2d 478, 2d Dist., filed June 3, 1976.

Plaintiff has also joined five other members of the Zion police department as defendants. Although the participation of these defendants in the incident is not fully explained in the complaint, subsequent pleadings and discovery indicate the gravamen of plaintiff's claim against them to be that defendant Robert H. Corder, Zion's Chief of Police at the time of the incident, was grossly negligent in failing to properly supervise and instruct police officers in obtaining search and arrest warrants prior to entering a dwelling and that defendants Franklin L. Brown, Mark Scheribel, Lester Guthrie and Vernon Summerford (the Zion policemen who arrived on the scene after the shooting) searched plaintiff's home and seized his gun collection in an arbitrary and unreasonable manner and subjected the wounded plaintiff to threats of physical abuse. In addition, all defendants are alleged to have conspired to deprive the

---

1. Plaintiff also cites 42 U.S.C. §§ 1981, 1985 and 1988, and 18 U.S.C. §§ 241, 242 and 371.

2. Plaintiff has declined the appointment of counsel.

plaintiff of his constitutional rights, in violation of 42 U.S.C. § 1985(3).

Defendants' earlier motions to dismiss were denied and they now present motions for summary judgment, supported by affidavits, depositions, answers to interrogatories, and a police report of the occurrence. The authenticity of the police report has been admitted and substantial portions have been adopted as the defendants' present testimony in their affidavits. Plaintiff has filed no opposing affidavits. Instead he relies on uncertified abstracts of testimony and other unauthenticated documents from his state criminal trial. Most of plaintiff's materials are not in the form required by Rule 56. Nevertheless, the exclusion of these materials does not alter the burden on the moving parties to show the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

A review of the record here discloses that in the late afternoon of May 25, 1973, Sheriff Knutell, dressed in a business suit, drove an unmarked car to plaintiff's home to serve the divorce summons. He knocked at the side entrance which had a glass-panelled storm door and an inner door. Located on this inner door was a small sign which quoted the Second and Fourth Amendments and stated that any officer who entered the home without proper process would be treated as an intruder. Knutell was met at this side door by plaintiff's wife Maria, who asked Knutell to delay service until the next morning because plaintiff was intoxicated and belligerent. Plaintiff then came to the door. Plaintiff testified in his deposition in these proceedings that Knutell did not identify himself or produce any papers. When Knutell asked to come in and talk, plaintiff refused and closed the door. Knutell then retreated to his car and radioed for assistance.

Officer Reiner, dressed in uniform, arrived at the home within a few minutes and both men returned to the side door. Plaintiff answered the door and, according to plaintiff's deposition, Reiner asked to come into the house and speak with him. There is no evidence that the men identified themselves or presented any papers or process to plaintiff at this time. Plaintiff said, "No, you are not coming in, and that's final," and closed the door, securing the latch.

On plaintiff's return to the kitchen, his son Mark heard plaintiff swear to himself and remark that the police could only come into his home "over his dead body." Meanwhile, Officer Reiner entered the home through the side door and walked up the stairs into the kitchen. Both plaintiff and Mark testified in their depositions that the officers used force in entering the house. Plaintiff said someone yanked and rattled the outside door so hard that it sounded "like the whole door was coming off the side of the house." Mark testified that Reiner kicked open the unlocked kitchen door at the top of the stairs. Reiner's affidavit merely asserts that he "opened" the door.

Reiner walked through the kitchen to the doorway of the dining room where he saw plaintiff's wife and son. No words were spoken by anyone. Frightened by the situation, Maria and Mark departed the house through the front door, leaving plaintiff and the officer alone in the main part of the house. Knutell, who was unarmed, remained several steps behind Reiner and never penetrated further than the entranceway to the kitchen, according to the police report.

The subsequent events are sharply contested. Reiner's affidavit states that he saw plaintiff standing in a dimly lit room, asked plaintiff to come out, and indicated to him that Knutell had papers to read to him. Plaintiff responded, according to the affidavit, by drawing a weapon and shooting the officer in the stomach, knocking him back. As he reached for his weapon, Reiner was hit again in the right arm. Reiner fell to the floor whereupon plaintiff approached him with a gun and stated that he was going to kill him. Reiner then fired his revolver, hitting plaintiff in the leg. With plaintiff lying wounded on the floor, Reiner crawled out of the house.

Plaintiff's account of the shooting is quite different. He stated in his deposition that after he heard the violent entry he walked quickly to his bedroom. As he leaned over to open a gun locker in the bedroom closet, he lost his glasses, impairing his vision. He then heard several shots coming through the inner doors of the house. He took out a pistol, looked outside and noticed three men, one armed with a shotgun, and then fired four or five rounds into a rocking chair in the corner of the room "to scare somebody if I could." He then returned to the locker for another pistol, crouched near a wall of the dining room for protection, and fired one or two more shots into the same corner. Without ever seeing or exchanging conversation with anyone in the house, plaintiff next found himself wounded in the left leg by a shot coming from the kitchen. All of his fire went into the walls and was not directed toward anyone. Plaintiff does not explain how Reiner was shot.

After the shooting and in response to a call for assistance, defendants Brown, Scheribel, Guthrie and Summerford arrived on the scene. After discovering Officer Reiner lying wounded outside on the sidewalk, Officer Brown broke the glass in the back door and entered the house with Officer Scheribel. Detective Guthrie simultaneously gained access to the house by breaking the glass in the front door. According to the police report, the three men arrested and handcuffed the plaintiff, who was lying on the floor. Plaintiff offered no resistance. After disarming plaintiff, the officers searched the house in vain for other persons.

According to plaintiff's deposition, the officers threatened him and physically abused him after his arrest. Plaintiff was carried out of the house without a stretcher and laid on the sidewalk. One of the officers then threatened to leave him lying there unless he agreed to be treated at the hospital that they chose. Someone else told him, "You be quiet or we will pump 14 more rounds into you and finish you off." This testimony is not expressly contradicted by defendants' affidavits.

After plaintiff and Reiner were removed from the scene, Detective Guthrie and Sergeant Summerford returned to the house, entered it and performed a "crime scene investigation." Chief of Police Corder was off duty at the time of the incident. His only direct involvement consisted of a hospital visit with Officer Reiner, according to Corder's affidavit.

On the basis of the record, complete summary judgment is appropriate as to defendant Corder. Certain aspects of actions of the other six defendants, however, raise genuine issues of fact respecting certain of the alleged violations of the plaintiff's Fourth and Fourteenth Amendment rights which fall within the scope of the Civil Rights Act; other aspects of their alleged conduct can be disposed of summarily.

■ Defendants Brown, Scheribel, Guthrie and Summerford allegedly conducted an unreasonable search of plaintiff's home, threatened him with physical abuse, and conspired to deprive him of his constitutional rights. The evidence shows that Brown, Scheribel and Guthrie broke into plaintiff's home only after finding Officer Reiner lying wounded on the sidewalk. Plaintiff does not challenge the lawfulness of his arrest, and this forcible entry was clearly justified to effectuate it. The situation presented a need to act swiftly and to subdue and arrest the plaintiff, who at that point appeared to be armed and firmly capable of causing further bloodshed. The plaintiff was arrested without any sign of abuse. Subsequently the officers conducted three or four searches of the home for other persons, weapons and evidence.

■ The reasonableness of the warrantless searches should be analyzed in three phases. According to the now verified and authenticated police report, immediately upon the arrest of plaintiff, the three officers searched him and the nearby vicinity and found two pistols, one in the plaintiff's pocket and one lying near his head. When an arrest is made, it is reasonable to search the arrestee's person and the

area within his immediate control from which he might gain possession of a weapon or destructible evidence. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 385 (1969). After disarming plaintiff, the three officers quickly searched the rest of the home for additional persons or weapons as a security measure. Clearly, where the house was known to have been the arena for intense and multiple gunfire, the high potentiality of danger surrounding the arrest permitted this cursory safety check and protective sweep. *Cf. McGeehan v. Wainwright,* 526 F.2d 397 (5th Cir. 1976); *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Thus, we conclude that these first phase searches were lawful and not actionable.

The second phase of the searches involved the locked basement and cabinet from which were seized a number of weapons (which plaintiff characterizes as his "collection") after the officers (with Sergeant Summerford now present) procured consent and keys from plaintiff's wife, who was standing outside the home. Because this search extended beyond the spatial limitations of a search incident to an arrest, its lawfulness must rest upon the consent of plaintiff's wife.

▮ In *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Court, after noting the assumption of the district court and court of appeals "[T]hat the voluntary consent of any joint occupant of a residence to search the premises jointly occupied is valid against the co-occupant . . . ,"[3] went on to observe that "more recent authority here clearly indicates that the consent of one who possesses common authority over premises or effects is valid against the absent, nonconsenting person with whom that authority is shared." 415 U.S. at 170, 94 S.Ct. at 993. Here Maria's undisputed status as plaintiff's wife, and as a co-inhabitant of the house, her presence on the scene, and her custody of the keys gave her suffi-

cient dominion over the premises to enable her to grant the necessary consent. No contention is made that her consent was not voluntarily given. In these circumstances we conclude the search of the basement and cabinet did not violate plaintiff's Fourth and Fourteenth Amendment rights and was not actionable.

The third phase of the search occurred after the plaintiff, who had been arrested while lying on the floor of the dining room or the living room, had been taken to the hospital. According to the police report, Officers Brown, Scheribel, Guthrie and Summerford then checked the house for physical evidence and collected live rounds, shell casings and spent slugs from the kitchen, dining room, bedroom and living room. The sign was also removed from the side door. Later that evening, after listening to witness statements at the police station, Detective Guthrie and Sergeant Summerford returned to perform a "customary crime scene investigation." There is no evidence that the officers ever procured a search warrant. Nor is there any evidence of consent to this search by plaintiff or anyone with common authority over the premises. *Matlock, supra.* At this time several guns were seized from plaintiff's bedroom closet and a pellet gun, later identified as belonging to plaintiff's son, was taken from an upstairs bedroom. Other evidence was also collected. According to her deposition, when plaintiff's wife returned home that evening, the whole downstairs "looked ransacked" and was "a mess."

▮ On the basis of these facts we are unable to find any justification for such an extensive warrantless search, at a time when the mechanics of the arrest of the only suspect had long since come to an end. This third phase was not spatially limited to the room where the arrest occurred, nor was it "substantially contemporaneous with the arrest." *Stoner v. California,* 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964). The officers had ample time to

---

**3.** 415 U.S. at 169, 94 S.Ct. at 992. The assumption was based on a substantial body of case authority from this circuit, other circuits and states, including Illinois. 415 U.S. 169–170, n.4, 5 and 6, 94 S.Ct. 988.

secure a warrant, and no exigent circumstances have been urged to excuse their failure to do so. We are not convinced that the seizure of the other weapons from plaintiff's bedroom closet, of the sign, of the pellet gun from upstairs, was necessary either to protect the officers or to preserve the evidence from destruction. In these circumstances, a genuine issue of material fact exists concerning the reasonableness of the search of the plaintiff's home, and defendants Brown, Scheribel, Guthrie and Summerford are therefore not entitled to summary judgment on this issue. Indeed, on the record as presently constituted, plaintiff may well be entitled to a summary finding in his favor as to those defendants' liability for the third phase search. That relief not having been requested, we refrain from granting it on our own motion.

■ Although summary judgment is inappropriate on the third phase search, two other of plaintiff's claims against these officers are without merit and may be summarily adjudicated under Rule 56(d). Plaintiff testified in his deposition that one of these officers threatened to withhold medical assistance or kill the plaintiff if he failed to go to their chosen hospital or to lie quietly on the sidewalk after his arrest. Although these threats lack any apparent justification, they did not result in any physical contact between the parties or any physical injury to plaintiff. Several courts have concluded, and we agree, that mere words or threats, however violent, do not amount to an actionable assault under § 1983. *Bolden v. Mandel,* 385 F.Supp. 761, 763 (D.Md. 1974); *Jones v. Superintendent,* 370 F.Supp. 488, 491 (W.D.Va.1974); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. 1973), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32. In the tense and hostile atmosphere following the shooting of a policeman, it is not unreasonable to expect occasionally vehement verbal outbursts. Thus, where the colloquy between police and the arrestee does not rise to the level of physical harm, there is no violation of a constitutional right actionable under § 1983.

■ The other allegation against the four officers is that they conspired to deprive plaintiff of his constitutional rights. The record reveals no overt acts committed in furtherance of any conspiracy. Rather, plaintiff attempts to attach a conspiracy to the entire cluster of events surrounding the allegedly arbitrary invasion of his home by Reiner and Knutell. Mere unsupported conclusions and inferences are insufficient to support a charge of conspiracy. *Green v. Cauthen,* 379 F.Supp. 361, 377 (D.S.C.1974); *French v. Corrigan,* 432 F.2d 1211, 1213 (7th Cir. 1970). Because plaintiff has presented no material issue as to the existence of an actionable assault or conspiracy, summary judgment in favor of defendants Brown, Scheribel, Guthrie and Summerford on these issues is granted.

■ Plaintiff's claim against defendant Corder, the Chief of Police, however, must fail. Plaintiff has presented no evidence of any affirmative conduct by Corder, either by his presence at the scene, by his knowledge of the conduct of the officers, or by his authorization, direction or approval of their actions. Plaintiff's claim is instead grounded upon Corder's allegedly gross nonfeasance in failing to properly supervise and instruct all police officers, as a matter of departmental policy, to obtain search or arrest warrants prior to entering a dwelling. As a general principle, where the defendant has an affirmative duty to act and he fails to act accordingly, he may be held liable for his nonfeasance if his omission is unreasonable under the circumstances. *Huey v. Barloga,* 277 F.Supp. 864, 872 (N.D.Ill.1967). Here plaintiff has presented no evidence, however, that any departmental procedure established by defendant Corder, is inadequately impressed upon policemen or is defectively designed so as to encourage the violation of the constitutional rights of citizens; rather plaintiff attempts to infer circumstantially the existence of inadequate and unconstitutional procedures from a single occurrence. But an isolated instance of alleged misconduct cannot support such a broad condemnation of police procedures or support a charge of nonfeasance against supervisory police offi-

cials. *Cf. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Again, the charge of conspiracy against Corder is unsupported by any evidence. Therefore, his motion for summary judgment will be granted in its entirety.

 Plaintiff alleges that defendants Knutell and Reiner forcibly entered his home without a warrant to effectuate service of process and that Reiner then used unreasonable and malicious force against the plaintiff by shooting him. Clearly the plaintiff has a constitutional right to be free from unreasonable interference and arbitrary intrusion by the police. *Jenkins v. Averett,* 424 F.2d 1228, 1231–32 (4th Cir. 1970). Injuries arbitrarily inflicted by the police are constitutionally cognizable and remediable. *Id.* In the instant case, plaintiff's deposition and defendant Reiner's affidavit are in conflict concerning whether Reiner used force in entering plaintiff's home, whether Reiner ever identified himself to plaintiff as a police officer and explained the purpose of his visit, whether plaintiff or Reiner fired the first shot, and whether plaintiff's fire was intentionally directed towards Reiner. With these facts in dispute, a genuine issue of material fact exists concerning the justifiability of plaintiff's use of deadly force and concerning the officer's claim of self defense.

 Defendant Reiner argues that plaintiff's expressed failure to see or hear anyone in the house and his inability to explain his own or Reiner's injuries makes his story inherently incredible and negates any justification for shooting his weapon. Although evidence that is too incredible to be accepted by reasonable minds does not raise a genuine issue of credibility precluding summary judgment, *Whitaker v. Coleman,* 115 F.2d 305, 306 (5th Cir. 1940), plaintiff's evidence does not sink to the depth that *Whitaker* requires. According to his deposition, plaintiff heard a violent entry, heard several shots hit an inner door in the house, and saw someone standing outside with a shotgun. He had a reasonable fear for his safety and appeared to be threatened with deadly force. His failure to see anyone in the house itself can be explained by the loss of his glasses and his lack of movement throughout the house after obtaining his pistol. Plaintiff's testimony that he crouched in a corner for protection and haphazardly fired numerous shots into the wall does not negate the possibility that Reiner was hit by an errant bullet without being seen by the plaintiff. Although the trial might be no more than a swearing contest between the plaintiff and Officer Reiner, with both parties repeating their present testimony, the court would have the benefit of observing their demeanor in resolving disputed matters. An attack on the credibility of plaintiff's testimony is best presented in that forum. Thus, summary judgment as to plaintiff Reiner on the issue of infliction of summary punishment is not appropriate.

 Nevertheless, we leave open the question of whether defendant Reiner is entitled to summary judgment under the doctrine of collateral estoppel. If plaintiff's subsequent conviction for aggravated battery arising out of the incident necessarily included a finding that plaintiff's shooting of Officer Reiner was without legal justification, plaintiff may be barred from relitigating this issue. The estoppel, however, extends only to questions distinctly put in issue and directly determined in the prior criminal proceeding. *See Bergstralh v. Lowe,* 504 F.2d 1276 (9th Cir. 1974); *Williams v. Liberty,* 461 F.2d 325 (7th Cir. 1972); *Palma v. Powers,* 295 F.Supp. 924 (N.D.Ill.1969); 1 B Moore's *Federal Practice,* ¶ 0.418[1] (1974). Lacking a certified copy of the common law record (i. e., indictment, plea, instructions, verdict and judgment) and the appellate opinion of the state prosecution, and absent the parties' discussion of this issue, we are unable to decide the question of estoppel here. However, we urge defendant Reiner to consider a renewed motion for summary judgment on this ground.

Defendants Knutell and Reiner are charged with entering plaintiff's home without a warrant to effectuate the service of a divorce summons. There is no evi-

dence that Knutell physically or verbally abused the plaintiff, or that he was armed. Nor was Knutell in the immediate presence of Reiner or plaintiff at the time of the shootings. Nevertheless, according to statements in the police report, defendant Reiner's affidavit, and plaintiff's deposition, Knutell directly requested the assistance of Officer Reiner, was in Reiner's presence when Reiner entered the home without plaintiff's consent and possibly with the use of force, and followed Reiner for some distance into the house.

■■■■ The officers had no right or authority to make a *forcible* entry into the house for the purpose of serving civil process, even after refusal of admittance. 72 C.J.S. Process § 34d (1951); *cf. Warden v. Hayden, supra.* Furthermore, as to Knutell, one who is given the badge of authority may not ignore the duty imposed by his office and assist or fail to stop other officers who engage in an unlawful entry or who summarily punish third persons in his presence or otherwise within his knowledge. *Byrd v. Brishke,* 466 F.2d 6, 11 (7th Cir. 1972). Defendant Knutell presents no evidence that his actions were taken in good faith. Furthermore, plaintiff's deposition testimony is uncontradicted that Knutell failed to identify himself or display any papers to the plaintiff. In these circumstances, a genuine issue of material fact remains as to whether defendants Reiner and Knutell, at the time they acted, knew or as reasonable men should have known that their acts would infringe plaintiff's constitutional right to be secure against arbitrary intrusions by law enforcement officials. *Cf. Jenkins v. Averett,* 424 F.2d 1228, 1231 (4th Cir. 1970); *Bowens v. Knazze,* 237 F.Supp. 826, 827–28 (N.D.Ill. 1965). Therefore their motions for summary judgment are denied.

The motion of defendant Robert Corder for summary judgment is granted; the motions of defendants Peter Reiner and Frank Knutell for summary judgment are denied; the motions of defendants Franklin Brown, Mark Scheribel, Lester Guthrie and Vernon Summerfield are granted in part and de-

nied in part. Cause set for report on status Thursday, September 23, 1976 at 9:30 a. m.