Ramon S. MAGAYANES, Plaintiff,

v.

CITY OF CHICAGO et al., Defendants.

No. 80 C 1299.

United States District Court,
N. D. Illinois, E. D.

Sept. 4, 1980.

Lonny Ben Ogus, Chicago, Ill., for plaintiff.

William R. Quinlan, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Defendants City of Chicago (the "City"), Richard Brzeczek ("Brzeczek"), M. Michelborough ("Michelborough") and J. Baldridge ("Baldridge") have moved to dismiss the Second Amended Complaint (the "Complaint") of plaintiff Ramon Magayanes ("Magayanes"). For the reasons stated in this opinion and order, the motions of the City and Brzeczek are granted and the motion of defendants Michelborough and Baldridge is denied.

### Facts

Magayanes alleges that on November 13, 1979 he was arrested and beaten by Terrance and Sullivan, both Chicago police officers, solely because of their belief that he was Iranian. Michelborough and Baldridge, also Chicago police officers, drove the squadrol in which Magayanes was transported to jail following his arrest. Their alleged liability is predicated on Magayanes' assertion that he was injured during the drive to jail. Magayanes claims that injury was due to all four officers' "failure to prevent plaintiff from being injured" because of their belief he was Iranian (Complaint ¶ 32–33).

Brzeczek and the City are alleged to have "knowingly, intentionally, maliciously with deliberate indifference and gross negligence" (Complaint ¶ 24, 40, 52) "failed in their duty to control, supervise, and in any way train their agents in dealing with anti–Iranian sentiments by their agents or the public" (Complaint ¶ 10, 27, 46), thereby directly and proximately causing Magayanes' injuries.

Magayanes claims various constitutional violations, and entitlement to relief against all defendants under the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985.

### Dismissal of the City

In its motion to dismiss, the City relies chiefly on Magayanes' alleged failure to plead actions by the City sufficient to meet the standard established in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell* a class of female employees sued under Section 1983, alleging that New York's Board of Education and Department of Social Services had, as a matter of official policy, compelled pregnant employees to take unpaid leaves of absence before such leaves were medically necessary. Overruling *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court held that a municipality was a "person" subject to liability under Section 1983 for unconstitutional action that (436 U.S. at 690–91, 98 S.Ct. at 2035–36):

> implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers [or that constitutes a] governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels. . . . [1]

1. More expressly, the Court in *Monell* noted that a municipality could not be held liable under Section 1983 solely on the theory of respondeat superior. 436 U.S. at 693–94, 98 S.Ct. at 2037-38. But as Justice Stevens pointed ed out in his concurrence, the Court's discussion of the "outer bounds" of municipal liability was dictum, because the issue before the Court was a formal municipal policy. Thus it may be arguable, in light of the narrow holding in *Monell*, that the standard quoted above does not limit findings of municipal liability *only* to instances where a violative "policy" or "custom" of the city is demonstrated. Such a restrictive view of *Monell* was expressed by Judge Grady of this Court in *Thedford v. Joyce*, 79 C 3061 (July 3, 1980).

It is difficult to perceive how the actions allegedly giving rise to the City's liability in this instance (failure to control, supervise or train the City's agents to deal with anti–Iranian sentiment) could be construed to constitute an "officially adopted policy" or "governmental custom" thereby satisfying the *Monell* requirement. Magayanes alleges a single instance of individual officers' misconduct that, however reprehensible if true, does not indicate systematic, city–supported abuses of the nature to which *Monell* makes reference.

Magayanes' principal arguments in opposition to the City's motion are two–fold:

First, Magayanes contends that some language in *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), dictates that municipal liability is proper here (Plaintiff's Brief at 2–3). However, *Owen*, which involved direct actions by a City Council and a City Manager pursuant to the Council's orders, did not suggest a modification of the *Monell* standard. In fact, *Owen* expressly recognized the respondeat superior limitation suggested by *Monell*; 100 S.Ct. at 1418 n. 39.

Second, Magayanes claims that the Complaint's allegations against the City reflect sufficient specificity and probability of success that, under the general principles governing the disposition of motions to dismiss, Magayanes is entitled to "his day in court" (Plaintiff's Brief 3–4). This Court concurs in the views expressed by Judge Grady in *Thedford v. Joyce*, supra, dealing with circumstances quite similar to those in this case. Judge Grady recognized that the principle "that an action should not be dismissed on the pleadings unless it appears that plaintiffs can 'prove no set of facts in support of their claim'" applies in the Section 1983 context. Nonetheless he held that allegations against a municipality will not suffice if they are so conclusory as not to support "any possible *Monell*–type claim against the City or the head of the Police Department." Specifically, he noted that plaintiffs must "explain the overt acts relied upon as a basis for the claim that a *pattern* of unconstitutional action exists. . . ." (emphasis added). In this case, the entire action is predicated on a single incident with no intimation of the requisite "pattern."

### Dismissal of Brzeczek

For the most part, both parties' briefs treat defendants Brzeczek and the City as governed by the same principles. Accordingly, the foregoing discussion is equally applicable in evaluating Brzeczek's liability or lack of it. In addition, Brzeczek notes two other factors.

First, in *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), the Supreme Court held that injunctions against Philadelphia's Mayor, City Manager and supervisory policy officials under Section 1983 were improper unless the complainants demonstrated an "affirmative link between the various incidents of police misconduct and the adoption of any plan or policy by defendants showing their authorization or approval of the misconduct." Magayanes responds that Brzeczek's "failure to do a job properly" constitutes such an affirmative link. In light of the analogous "failures" in *Rizzo*, more severe and systematic than those alleged here, this Court finds that argument unpersuasive.

Second, Brzeczek points out Magayanes' failure to allege facts showing Brzeczek's personal (as opposed to official) culpability. Magayanes' brief made no response to this point, which provides an added justification for dismissing the Complaint as to Brzeczek.

### Non–Dismissal of Michelborough and Baldridge

Magayanes argues that defendants Michelborough and Baldridge are liable under two theories. First, they allegedly "knowingly, intentionally, maliciously with deliberate indifference and with gross negligence" failed in their "duty" to Magayanes after his arrest, causing him injury and

violating his civil rights. Second, they allegedly *conspired* with other defendants "to deny and deprive plaintiff of rights guaranteed to him under the Constitution and laws of the United States" (Complaint ¶¶ 38, 50). At this stage of the proceedings, the only issue before this Court is whether Magayanes' allegations satisfy the liberal pleading requirements of Fed.R.Civ.P. 8(a).[2]

As to the first theory of liability, Magayanes has alleged that Michelborough and Baldridge transported Magayanes to the police station in a police squadrol, that he was injured while in their custody and that such injury was a result of their *intentional* breach of duty owed to Magayanes (Complaint ¶¶ 30, 31, 40). This Court holds that those allegations (1) are sufficiently specific for purposes of Fed.R.Civ.P. 8(c)[3] and (2) satisfy the requirement that intentional or reckless misconduct must be alleged to maintain a civil rights action. See *Beard v. Mitchell*, 604 F.2d 485 (7th Cir. 1979).[4]

As to Magayanes' conspiracy theory,[5] defendants argue dismissal is proper because the allegations are "devoid of facts," vague and conclusory. Conspiracy is alleged in each of the three Counts of the Complaint, by the same language:

> In doing the acts and things above complained of . . . [defendants] were conspirators engaged in a scheme and

conspiracy designed to deny and deprive plaintiff of rights guaranteed to him.

. . .

Defendants cite three decisions in support of the proposition that the factual specificity required for a conspiracy charge is lacking. First is *Everett v. City of Chester*, 391 F.Supp. 26 (E.D.Pa.1975), involving allegations quite similar to those in this case. That Court dismissed the complaint, holding (391 F.Supp. at 29, emphasis added):

> Conclusory claims of conspiracy unsupported by factual allegations *regarding an agreement* are insufficient to establish a 1985(3) claim.

*Coggins v. McQueen*, 447 F.Supp. 960 (E.D. Pa.1978), merely recites the *Everett* rationale. Finally, *Simms v. Reiner*, 419 F.Supp. 468 (N.D.Ill.1976), granted a motion for summary judgment, holding that *on the basis of the record* (affidavits, depositions, answers to interrogatories and a police report) a charge of conspiracy had not been made out.[6]

This Court declines to follow the *Everett* decision, because it has not been suggested in this Circuit that express factual allegations of an *agreement* are necessary to state a cause of action for conspiracy. Absent a controlling precedent to that effect, this Court applies the Supreme Court's teaching in *Conley*, supra, 355 U.S. at 45–46, 78 S.Ct. at 102:

---

**2.** That Rule requires that a pleading that sets forth a claim for relief include "a short and plain statement of the claim showing the pleader is entitled to relief, . . . ."

**3.** In *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), the Court noted that "all the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." This Court finds that the Complaint apprises Michelborough and Baldridge of the injury alleged, the particular factual circumstances in which the alleged injury arose and the legal theories under which relief is requested, complying with the *Conley* standard.

**4.** Michelborough and Baldridge also argue that Magayanes' theory is one of "mere negligence," insufficient under *Beard*. However, in two instances Magayanes expressly alleges that those defendants acted "knowingly, intentionally,

maliciously with deliberate indifference and with gross negligence" (Complaint ¶¶ 40, 52).

**5.** Complaint Paragraph 28 alleges a conspiracy between Terrance and Sullivan. Paragraphs 38 and 50 allege a conspiracy among all defendants. Although defendants' motion is for the dismissal of the City, Brzeczek, Michelborough and Baldridge only, in their Memorandum in Support of the Motion they state that "Terrance and Sullivan join in this portion of the Motion" (Defendants' Memorandum at 8). "This portion" refers to Paragraph 4 of the Motion, which states "Plaintiff fails to allege a conspiracy between any of the defendants."

**6.** It may be noted that in *Simms*, supra, while the Court granted defendants' motion for summary judgment on the grounds that requisite elements of conspiracy had not been demonstrated, defendants' earlier motions *to dismiss* had been denied. 419 F.Supp. at 471.

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

 Under the *Conley* approach, it does not appear without question from the face of the Complaint that proof of a conspiracy is beyond Magayanes' reach. Even if "an agreement" is necessary to establish a conspiracy,[7] it would be unduly technical to require plaintiff to plead a specific agreement when joint action is implicit in the very concept of conspiracy, and conspiracy generally has been alleged. On a motion to dismiss any inference drawn must be favorable to plaintiff, *United Milk Products Co. v. Michigan Avenue National Bank of Chicago*, 401 F.2d 14, 17 (7th Cir. 1968); and allegations of the pleading are to be construed in the light most favorable to the pleader and accepted as true. *National Van Lines, Inc. v. United States*, 326 F.2d 362, 372 (7th Cir. 1964); 5 Wright, Miller & Cooper, Federal Practice and Procedure § 1363 at 656 (1969).

 Cases in this Circuit do suggest that specific allegation of an overt act committed in furtherance of a conspiracy is required to resist dismissal of a conspiracy charge. *See French v. Corrigan*, 432 F.2d 1211, 1213 (7th Cir. 1970); *Simms v. Reiner*, supra, 419 F.Supp. at 474. Such allegations are present here.[8] Each of the three conspiracy allegations is predicated on "the acts and things above complained of." Those acts are within (1) Paragraphs 11 and 12 of the Complaint, alleging a physical beating of Magayanes by Terrance and Sullivan (preceding the conspiracy allegation of Count I); (2) Paragraph 32, alleging that while under the control of Terrance, Sullivan, Michelborough and Baldridge, Magayanes was injured as a result of their breaching a duty owed to him (preceding the Count II conspiracy allegation); and (3)

Paragraph 45, containing the same allegation (preceding the final conspiracy charge in Count III). Each of the allegations of defendants' acts, at this stage of the proceedings, is a sufficient description of an overt act in furtherance of the alleged conspiracy to satisfy the pleading requirements set forth above.

*Conclusion*

Defendants' motion to dismiss is accordingly granted solely as to the City and Brzeczek. All remaining defendants are ordered to answer the Complaint on or before September 26, 1980.

---

7. In the antitrust field, for example, "conscious parallelism" has been held sufficient to constitute a "conspiracy."

8. To the extent the conspiracy allegations purport to implicate the City and Brzeczek, a fact unclear from the Complaint, they are dismissed for the reasons set forth earlier in this opinion. In this respect the Court notes that the Complaint alleges no overt acts on the part of those defendants in furtherance of the conspiracy.