**Robert BARR, Plaintiff,**

v.

**Philip T. HARDIMAN, et al.,
Defendants.**

No. 80 C 6867.

United States District Court,
N.D. Illinois, E.D.

April 15, 1982.

Michael Sorokas, Marseilles, Ill., Bossov, Lipschultz & Associates, Chicago, Ill., for plaintiff.

Nancy K. Donnellan, Terry McDonald, Asst. State's Attys., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff Robert Barr, a prisoner in Cook County Jail, brings this action against defendants, prison officials, prison employees, and the County of Cook, for damages under 42 U.S.C. §§ 1981, 1983, and 1985. Barr alleges that the defendants conspired to deprive him of his constitutional rights and failed to prevent injuries to him caused by other prisoners at Cook County Jail. Defendants ask dismissal of this case for failure to state a claim for which relief may be granted. Fed.R.Civ.P. 12(b)(6). For the reasons stated below, we dismiss the County of Cook from this suit and dismiss all defendants as to Barr's § 1981 and § 1985 claims. We leave standing Barr's § 1983 claims against all defendants except the County of Cook.

### I. Facts

For purposes of this motion to dismiss, we assume the truth of the facts alleged by plaintiff. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In August 1980, plaintiff Robert Barr was arrested and charged with automobile theft. Barr was unable to post bond and therefore was incarcerated in the Cook County Jail. While in jail various inmates, mostly street gang members, began extorting money, favors, and services from Barr, who was not a member of any street gang. Barr repeatedly protested to defendants that he was being extorted and threatened with great bodily harm by the inmates. He asked defendants to transfer him to an area of safety, but they took no action and showed "deliberate indifference to Barr's plight and safety." On September 18, 1979, Barr appeared at his preliminary hearing and informed the presiding judge of the extortionists' demands and threats. The judge ordered the defendants to move Barr from his dormitory to an area of safety. While enroute back to Cook County Jail, Barr told the officers transporting him of the extortion threats and his fear for his safety. Later, during the intake procedure at Cook County Jail, Barr told the officer of the day and the shift commander of his situation, but they did not move him to an area of safety.

On or about September 23, 1979, defendant Haley issued Barr a work assignment of serving food to the extortionists. While serving the food, a street gang "general" demanded an extra portion of meat from Barr, but Barr refused to comply with his demand.

At Cook County Jail, prison guard shift procedures in Barr's dormitory regularly resulted in intermittent absences of dormitory supervisors. On one such occasion, Barr was beaten by the extortionists. His cries for help went unanswered. After the beating, Barr identified the extortionists and asked to be moved to an area of safety, but the defendants refused his request. On September 25, 1979, Barr accepted a plea bargain of two years probation because he feared for his safety if he were returned to jail.

In his amended complaint, Barr alleges that inmate extortion is common practice and custom at Cook County Jail. Barr further alleges that defendants failed to adequately protect him, transfer him to an area of safety, provide sufficient numbers of security personnel, conduct and adequately supervise orderly shift change and intake procedures, segregate Barr from gang members, issue safe work assignments, follow prison rules and regulations, screen prison supervisors and guards for street gang affiliation, respond to Barr's cries for help, and act promptly to protect Barr. He alleges that the defendants' acts

or omissions were deliberately taken with indifference to Barr's safety. Alternatively, Barr alleges that the defendants acted recklessly, willfully, and wantonly and failed to exercise ordinary care. Defendants' acts are alleged to constitute official practice, policy, custom, and procedure. As a result of defendants' actions, Barr suffered permanent mental and physical injuries and has had to pay costs for treatment of these injuries.

In Count I, Barr alleges that the actions of the defendants violated his Fifth, Fourteenth, Eighth and Thirteenth Amendment rights. In Count II, Barr alleges that the defendants conspired to deprive him of his rights, privileges and immunities under the Constitution and discriminated against him on the basis of race and his status as a pretrial detainee and person not aligned with any street gangs. In Count III, Barr alleges that the defendants' actions violated various Illinois statutes resulting in serious injury to Barr. In each count, Barr asks for compensatory and punitive damages, attorneys' fees and costs.

## II. Section 1983 Claims

We first turn to the § 1983 claims against the various defendants. Section 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In determining the sufficiency of a claim under § 1983, we are guided by the standard employed by the court in *Escalera v. New York City Housing Authority*, 425 F.2d 853, 857 (2d Cir.1970), *cert. denied*, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). The court stated that, "An action, especially under the Civil Rights Act, should not be dismissed at the pleadings stage unless it appears to a certainty that plaintiffs are entitled to no relief under any state of the facts, which could be proved in support of their claims." *See Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 101–102; *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir.1977). We have applied this standard in the past, *see, e.g.*, *Thedford v. Joyce*, No. 79 C 3061 (N.D.Ill. July 3, 1980), at 4, as we must in this case.

### A. County of Cook

The County offers a number of theories supporting its dismissal. Foremost among these is Barr's failure to plead actions by the County sufficient to meet the standard established in *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, a class of female employees sued under § 1983, alleging that New York's Board of Education and Department of Social Services had, as a matter of official policy, compelled pregnant employees to take unpaid leaves of absence before such leaves were medically necessary. The court, in overruling *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), held that a municipality can be held liable under § 1983 only for unconstitutional actions which "implement or execute a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or which constitute a "governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ...." 436 U.S. at 690–91, 98 S.Ct. at 2035–2036. In *Thedford v. Joyce*, No. 79 C 3061, at 2, we discussed the meaning of municipal policy under *Monell*:

> A municipality's "official policy" has been held by the Second Circuit to include the tacit or implied approval, authorization or encouragement of police misconduct. Nonetheless, local governmental units cannot be found liable solely because they employ a tortfeasor, on a theory of respondeat superior, or because of an isolated unconstitutional act of an employee. We recently held ...

that a cause of action is stated where a complaint alleges "systematic, widespread discriminatory practice" by a county assessor's office. A municipal policy might also be inferred where a *series* of acts have been taken by the police against one individual, rather than a single act against a large class of individuals.

*Id.* at 2–3 (citation omitted).

This court and others have wrestled with the problem of what factual allegations are sufficient to state a claim under *Monell.* We recognize the difficult task that Barr has in particularizing his allegations concerning a "policy," "ordinance," "regulation," or "custom" at this stage without the benefit of discovery. In *Thedford,* the plaintiff alleged that it was the policy of the Chicago Police Department to enter apartments unannounced, conduct searches of the apartments, and question the tenants. We dismissed the case because the allegations merely related to one particular instance, and no facts were alleged to support an extensive systematic, discriminatory past practice against the plaintiff.

Judge Shadur of this court reached a similar result in *Magayanes v. City of Chicago,* 496 F.Supp. 812 (N.D.Ill.1980). In *Magayanes,* the plaintiff was injured enroute to the police station after his arrest. He claimed that the policemen present in the squad car failed to prevent his injury because they believed that he was an Iranian. *Magayanes* further alleged that the City and the Superintendent of Police acted with deliberate indifference and gross negligence in failing to supervise and train policemen to deal with anti-Iranian sentiment. *Id.* at 1–2. Magayanes alleged no overt acts of the City or the Superintendent and therefore this case was dismissed for failure to allege a pattern of unconstitutional conduct.

In a recent case, *Hamrick v. Lewis,* 515 F.Supp. 983, 986 n. 4 (N.D.Ill.1981), Judge Aspen of this court in dismissing a *Monell* claim emphasized the importance of adequate allegations in § 1983 actions if discovery is to proceed properly: "A complaint that alleges a specific incident of wrongdoing or misconduct, the existence of similar such incidents, and a governmental policy, custom, or practice of perpetrating such wrongs upon persons such as plaintiff adequately frames the issues to be decided and gives the parties a basis for initiating discovery directed toward proving or disproving the ultimate question of liability." *Id.* at 986 n. 4.

■ Like the plaintiffs in *Thedford* and *Magayanes,* Barr does not sufficiently allege a persistent campaign against him. *Smith v. Ambrogio,* 456 F.Supp. 1130, 1134 (D.Conn.1978), and Barr's allegations of prison policy appear only to relate to his particular case. As in *Hamrick,* Barr fails to allege incidents of wrongdoing or misconduct involving other prisoners. However, Barr does allege that the County's maladministration of the prison, which led to his injury, constitutes a governmental custom under *Monell.*

Judge Marshall of this court in *Mayes v. Elrod,* 470 F.Supp. 1188, 1193 (N.D.Ill. 1979), held that allegations of underfunding for safe and proper operation of the Cook County Jail may constitute a pattern and custom in the County. In *Mayes,* the plaintiff sought damages for mental and physical injuries resulting from failure of the defendant County of Cook and others to provide him with adequate protection from attacks by other inmates and with humane living conditions during his confinement. Mayes alleged inadequacies in sleeping facilities, ventilation, food, security, cell door locks, numbers of security personnel, vermin and insect control, and classification of assaultive inmates. He further alleged severe overcrowding and unsanitary and unhealthy living conditions. Judge Marshall denied the County of Cook's motion to dismiss because the County persistently maladministered or refused to perform its mandatory duties. The court viewed the deplorable prison conditions enumerated in Mayes' complaint as a failure to conform to the dictates of the County Department of Corrections Act, Ill. Rev.Stat. ch. 125, §§ 201–15 (1977), which

provides that the Department of Corrections has a duty to operate the county jail, to have charge of all prisoners therein, to establish appropriate classification services and programs, and to establish separate detention and commitment facilities whenever feasible.

Here, Barr does not allege that the County's underfunding led to an unsafe and improper operation of the jail. Barr does allege inadequate numbers of security personnel, which is identical to a condition alleged by Mayes, and a failure to adequately supervise intake procedures which is similar to Mayes' complaint of inadequate inmate classification systems. As in *Mayes*, Barr alleges in Count III that defendants failed to adequately perform their duties as required by the County Department of Corrections Act.[1] These allegations, however, are not enough to survive the County's motion to dismiss, because they are not buttressed with allegations of pervasive and deplorable conditions as alleged in *Mayes*. Although in Barr's case prison officials may not have properly performed their mandatory duties, the allegations do not present the persistent maladministration which frequently and systematically denies prisoners the full protection of existing law. Moreover, simply stating allegations similar to those made by the plaintiff in *Mayes* or by successful plaintiffs in other § 1983 actions is not enough. In order to state a claim against a municipality, "a section 1983 plaintiff must do more than merely parrot the language of *Monell* or copy conclusory language from assorted decisions of other courts in which *Monell*-type claims have been upheld, at least at the pleading stage . . . ." *Hamrick v. Lewis*, 515 F.Supp. at 986 (plaintiff had paraphrased language found in *Magayanes v. City of Chicago*, 496 F.Supp. at 814;

*Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir.1979), *cert. denied*, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); and *Turpin v. Mailet*, 619 F.2d 196, 202 (2d Cir.1980), *cert. denied*, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980)). Like *Hamrick* and unlike *Mayes*, these allegations do not "provide the fodder for a claim of official custom." *Mayes v. Elrod*, 470 F.Supp. at 1193.[2]

### B. Hardiman and Elrod

■ Defendants Hardiman and Elrod, directors of Cook County Jail, ask this court for dismissal of the § 1983 claim against them. Barr alleges that he protested "to Defendants that he was being extorted by inmates and street gang members, requesting transfer to an area of safety and specifically, Plaintiff, Robert Barr, protested to Defendants Churchill, Haley, and 'Flip' and other yet unknown correctional supervisors and officers, all of whom had personal involvement, as did Defendants Hardiman and Elrod." Amended Complaint, ¶ 11. It is only in this paragraph of the amended complaint that Barr distinguishes among the defendants in this case. The doctrine of respondeat superior does not apply to § 1983 actions, *Thedford v. Joyce*, No. 79 C 3061, at 2; therefore, the personal involvement allegation is crucial to this case.

In *Campbell v. Anderson*, 335 F.Supp. 483 (D.Del.1971), the court dismissed the Warden of the Delaware Correctional Center and the Director of the Division of Adult Correction from a suit for injuries sustained at the hands of other inmates. The court stated,

> The present complaint does not allege or charge, directly or inferentially, that the

---

1. Barr also alleges that defendants violated provisions of the Unified Code of Corrections, Ill. Rev.Stat. ch. 38, §§ 1003–6–4, 1003–7–4, 1003–8–7 (1977). The Act applies, however, to State of Illinois correctional institutions rather than to county correctional institutions. Cook County Jail officials must adhere to the County Department of Corrections Act, Ill.Rev.Stat. ch. 125, §§ 201–15 (1977).

2. In reaching this decision, we reject the lesser standard adopted by the court in *Redcross v. County of Rensselaer*, 511 F.Supp. 364, 370 (N.D. N.Y.1981) (allegations are sufficient if "worded in such a manner as to at least raise a prospect that county policy caused the constitutional violations which plaintiff claims to have suffered").

Warden, the Director or the Secretary either personally directed, or participated in, consented to, tacitly approved, or even had any contemporary knowledge of the inmates' assault upon plaintiffs or the alleged conduct of the guard in failing to take action to stop the affray.

The pleadings before this court are not as insubstantial as those before the court in *Campbell.* The allegations of personal involvement here are accompanied with other allegations that the defendants acted with deliberate indifference to Barr's safety, and failed to move Barr to an area of safety as ordered by the judge at Barr's preliminary hearing. Barr also alleges that after he was beaten, he identified the extortionists and asked the defendants to move him to an area of safety, but his request was refused. Unlike cases cited by the defendants, here Barr's request was presumably made to the officials themselves. Consequently, Barr need not attribute acquiescence, knowledge, or conduct of subordinates to Hardiman and Elrod.

These allegations appear sufficient. In *Little v. Walker,* 552 F.2d 193 (7th Cir. 1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978), plaintiff brought suit against the Director of the Illinois Department of Corrections, the Governor, and the Warden and superintendent of a prison. Plaintiff, fearing for his safety, refused to perform an assignment in a gang controlled area of the prison. As punishment for his refusal, he was placed in protective segregation and denied certain procedural protections and religious, educational, medical, sanitary, and recreational privileges. The plaintiff alleged that defendants knew or should have known of these abuses and failed to correct them. The plaintiff maintained that these officials failed to provide him with reasonable protection from violent inmates and that they subjected him to impermissible privations while in protective segregation. The court held such allegations sufficient and denied defendants' motion to dismiss.

As in *Little,* the allegations here state that defendant prison officials acted with indifference to Barr's safety although he had allegedly alerted defendants to his fears. The allegations against Hardiman and Elrod lack the specificity we would prefer, but, viewing them in light most favorable to plaintiff, we believe that they adequately state a claim.

### C. Churchill, Haley, "Flip," and Unknown Guards, Agents and Employees

The allegations against these defendants are similar to those made against Hardiman and Elrod. Barr alleges that he specifically asked these defendants for a transfer to an area of safety. For the same reasons that we refuse to dismiss Hardiman and Elrod, we also refuse to dismiss these defendants.

We likewise refuse to dismiss the unknown guards, agents, and employees. In this case, it is not surprising that the identities of alleged defendants would not be known prior to the filing of the complaint. In similar situations, courts have held that "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir.1980), and cases cited therein.

### III. Section 1985 Claims

In Count II of his amended complaint, Barr alleges that the defendants Hardiman, Elrod, Churchill, Haley, "Flip," and unknown employees of Cook County Jail, conspired to refuse to remove Barr from an area of danger and to permit the beating inflicted upon him. Barr alleges that the defendants discriminated against Barr because of his race. Barr further alleges that the overt acts or omissions alleged in the complaint were in furtherance of the conspiracy and caused Barr serious injury.

Section 1985(3) provides that if two or more persons in any state conspire to injure another person or his property or de-

prive him of any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for damages against the conspirators.

In *Everett v. City of Chester*, 391 F.Supp. 26 (E.D.Pa.1975), the plaintiffs brought an action against defendant police officers seeking damages for their alleged use of unreasonable force in quelling a disturbance between plaintiff's daughter and another high school student. The conspiracy count of the complaint stated

In doing the acts and things above complained of the Defendants were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive the Plaintiffs' rights guaranteed to Plaintiffs under the Constitution
. . . .

The Court held the count insufficient to state a claim under § 1985(3). The court stated that "the bare averment that the 'defendants were conspirators' . . . [in] the instant conspiracy count does not set forth any factual allegations concerning the membership, formulation, or purpose of the alleged conspiracy." *Id.* at 29. *See, e.g., Coggins v. McQueen*, 447 F.Supp. 960 (E.D. Pa.1975); *Lucas v. Kale*, 364 F.Supp. 1345, 1374 (W.D.Va.1973); *Droysen v. Hansen*, 59 F.R.D. 483, 484 (E.D.Wis.1973); *Huey v. Barloga*, 277 F.Supp. 864, 868 (N.D.Ill. 1967). *See also French v. Corrigan*, 432 F.2d 1211 (7th Cir.1970), *cert. denied*, 401 U.S. 915, 91 S.Ct. 890, 27 L.Ed.2d 814 (1971).

■ The complaint in this case is similar to that in *Everett*. The allegations are conclusory. As in *Everett*, the complaint fails to set forth any factual allegations concerning the membership, formulation, or purpose of the alleged conspiracy. Just as we have refused to gratuitously infer class-based discrimination to support a § 1985(c) action, *Thedford v. Joyce*, No. 79 C 3061, at 7, we will not gratuitously find a conspiracy where no allegations support its

existence.[3] Therefore, we dismiss the § 1985 claims against defendants.

## IV. Section 1981 Claims

■ Section 1981, 42 U.S.C. § 1981, provides that,

All persons within the jurisdiction of the United States shall have the same right in every State to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Barr alleges that defendants "intentionally, recklessly or negligently and while acting under color of law . . . discriminate[d] against Plaintiff because of his race . . . ." Amended Complaint ¶ 29. The defendants allegedly also practiced invidious discrimination against pretrial detainees and against persons not aligned with any street gangs. *Id.* ¶ 31.

These allegations are insufficient to support a § 1981 claim. There is no claim, nor are there any facts alleged from which to infer that Barr was treated differently than similarly situated white prisoners. *See German v. Killeen*, 495 F.Supp. 822 (E.D.Mich.1980) (employment discrimination). Nor does the legislative history of § 1981 support a cause of action for discrimination against pretrial detainees or persons not aligned with any street gangs. The purpose of the act was to "uproot the institution of slavery and to eradicate its badges and incidents." *Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266 (6th Cir.1977); *see* Cong.Globe, 36th Cong., 1st Sess. 339–517 (1866).

## Conclusion

For the reasons stated above, we dismiss the County of Cook from this suit and dismiss all defendants as to Barr's § 1981 and § 1985 claims. We leave standing

**3.** We note that Judge Shadur in *Magayanes, supra* at 7, has held that allegations similar to those made by Barr are sufficient to support a conspiracy claim under *Conley* and *Escalera v.*

*New York City Housing Authority*, 425 F.2d at 857; the allegations of conspiracy here are insufficient and mere statements of legal conclusions.

Barr's § 1983 claims against all defendants except the County of Cook. Because plaintiff has framed his amended complaint so as to have allegations relating to the § 1983 claim in each count, we leave all counts intact and merely dismiss the defendants from this suit as to claims brought by plaintiff under the particular statutes. The remaining defendants should answer the § 1983 allegations by April 30, 1982. This cause is set for a status hearing on May 11, 1982, at 9:30 a.m.